IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DERALD RICHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0823-CV-W-HFS |
| ) | |
| CITY OF INDEPENDENCE and ) | |
| DEBRA CRAIG, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Derald "Ritchey" (Richey), a long-time employee of the City, alleges a retaliatory discharge in June, 2004, pursuant to a recommendation dated April 13, 2004. He contends he was punished for having complained of sexual advances by a fellow employee, Connie Knott. The recommendation for discharge asserted he "knowingly made false complaints" against Knott and also engaged in "threatening...intimidating, coercing and abusing" conduct with employees.

The retaliation issue is the main subject of debate in a motion for summary judgment, but other aspects of the complaint were that there had been discrimination based on gender (in that Knott had been treated differently and had not been disciplined), Richey had been subjected to a sexually hostile work environment, and he was punished for exercise of First Amendment rights. Debra Craig, a supervisory employee, is also a defendant, for reasons not clearly developed, and she has filed a motion for summary judgment (Doc. 34).

This case was taken off the trial docket in order to allow further study of the City's summary judgment motion (Doc. 36), briefing, and exhibits, including a statement of supplemental facts and further briefing in opposition to the motion for summary judgment. (Doc. 53). After further

consideration it is clear that nothing presented by Richey would allow submission of his claims to a jury and that the motions for summary judgment should be granted.[1]  Although there are immaterial  disputes about a few underlying facts, defendants have made a legally compelling response to the complaint based on uncontested portions of the record..

Dealing first with complaints other than retaliation, I conclude that the claims of sex discrimination are frivolous in that no one else, especially including Ms. Knott, has a record of conduct that is similar to that of Richey.   Plaintiff identifies no situations involving women employees that are really parallel to this case.  No hostile work environment, in the legal sense of <u>serious</u> or <u>pervasive</u> exposure to unwanted sexual aggressiveness is involved.  Illegal misconduct by Ms. Knott was not asserted prior to Richey's termination.  The First Amendment issues do not concern a protected right to raise issues of a public nature, but merely concern a personnel problem involving Richey.  Craig was simply one of the persons involved in discipline, and whatever Richey may complain of regarding her was within qualified immunity even if wrong, which I cannot determine in any event.  To the extent further elaboration is helpful, these rulings are adequately briefed by defendants, and I rely on such briefing.

There are at least two fatal defects in the retaliation claim.  Richey was not complaining of illegal sex discrimination or abuse because of sex; his own characterization was that he was seeking to "clear the air".[2]  Such a report of a problem is not protected by federal or state statutes designed

---

[1] Neither I nor a jury in this court would have jurisdiction to decide whether there was a wrongful discharge in some sense other than violation of the protections against sexual discrimination, or retaliation against complaints of pertinent law violations.

[2] The City's use of terms like "sexual harassment" are not binding, and apparently did not refer to federal or state law.  Plaintiff was more accurate in saying he was seeking to "clear the air" in a personality conflict situation involving male-female relations.  He thought Ms. Knott

2

to allow persons to complain of a violation of legal protections.³ No citation is offered by Richey's briefing that would describe his reporting of personnel problems as protected by statute, and his taking up such problems with his employer would not be within the statutory protections. Richey contended that Knott was occasionally physically flirtatious, or temperately solicited a relationship,. If so, this might have been against municipal policy as to employee conduct, but Richey never charged her with illegal sexual harassment. That is necessary for invocation of the federal rule against retaliation.

It is well established that limited "intersexual flirtation" is not covered by the prohibition against sexual harassment. Gupta v. Florida Board of Regents, 212 F.3d 571, 584-6 (11th Cir. 2000). While the public and some public employees may group together "merely bothersome and uncomfortable conduct" that may be considered sexually charged with "'true instances of sexual harassment'", the courts do not trivialize the concept in that manner. Nor did Richey, when he reported the alleged conduct of Knott, which (if she had taken the lead, as Richey says) ended immediately after he made known it was unwelcome. Thus, what Richey's counsel now claims to be protected whistle-blowing was not directed toward illegal conduct involving serious sexual harassment, as understood by the courts and Richey himself.

A procedural difference between this case and Gilooly, infra, on which Richey relies, is that Gilooly did ultimately make a sexual harassment claim before he was discharged, while Richey was terminated simply on the basis of what Gilooly did initially, making a report but not a charge of

---

was complaining about him, and was responding in a way to divert trouble for himself.

³A mistake as to pertinent law is protected and cannot be punished, but that is not a source of protected activity here, as Richey was not asserting, directly or by implication, a violation of his statutory rights.

3

illegality. If there had been no charge by Gilooly in his case I would suppose there would have been no basis for claiming illegal retaliation under the statutes. An employer is entitled to over-react to a gripe, even though an outside observer might question the justice of that decision.

Richey cites and quotes from Gilooly v. Missouri Department of Health and Senior Services, 421 F.3d 734 (8th Cir. 2005). The case is a significant one, but not supportive of his claim. The entire panel agreed that the protection of complaints does not extend to knowing falsehoods offered by complaining parties, and they may be disciplined or terminated for such falsehoods.

The majority in Gilooly would not allow summary judgment where there is a mere difference of evaluation of the credibility of testimony; in other words, a complainant who loses could not be disciplined by simply asserting that testimony was false because the complaint was unpersuasive. The majority suggested that some objective corroboration was needed to deny protection to a complainant. In the present case, most clearly we have the map sketched by Richey to show that the church-going visit was consensual rather than uninvited stalking.[4] Defendants may identify further fabrications in Richey's story, but a single significant documented misrepresentation or exaggeration is sufficient for drawing other adverse inferences.

The Gilooly majority indicates that separating unprotected false testimony claims from the protected, but unsuccessful, pursuit of legal remedies is a "difficult endeavor". 421 F.3d at 740. The Circuit may ultimately adopt Judge Colloton's view that good faith beliefs of the employer should suffice, in defending retaliation claims. Short of that, I do not think the Gilooly majority insists on

---

[4]When Richey said the visit to his home was "unannounced" he was asserting it was wholly uninvited. He has since given several versions of his supplying Ms. Knott with a map, on the day they first discussed attending church together, neither of which is consistent with calling a visit completely surprising. Exh. E to Reynolds Aff. (Ex. 4), Doc. 37, pp. 240-1, 267, 273-4.

4

air-tight corroboration of a claim of false or knowingly exaggerated defamatory testimony. Corroboration, particularly in the form of documents that a complainant has difficulty in explaining, should suffice where there is no good reason to challenge the good faith of a conclusion based on investigation. That conclusion is legally a dispositive defense here, particularly in light of Richey's own concession that his allegations about Ms. Knott were probably unwisely advanced, under a mistake of fact as to her later activities.[5]

It does seem probable, moreover, that at trial a jury would conclude that the dominant reason for the discharge was that the City had had enough personnel trouble with Richey, mostly related to insufficient anger control, and the failure to discharge him several years earlier, when it had been recommended, was apparently regretted by the new City Manager who took the final adverse action.[6] From the record as a whole I believe it entirely unlikely that Richey could prevail in this case.[7] Even a weak case is generally entitled to jury consideration, however, but the defects noted above are themselves dispositive.

---

[5] The admission gives objective support to the reduced weight and significance assessed to Richey's version of events, and somewhat corroborates the conclusion of the evaluators. This also distinguishes the situation from the essential "he said, she said" scenario dealt with in Gilooly.

[6] Richey candidly agreed that the City had problems with his employment that went beyond the sexual aspects of the Knott relationship. Richey Dep. P. 191, (Exh. A to Doc. 47).

[7] I have treated the new material presented in Doc. 53 as part of the record.

5

Summary judgment is granted in favor of both defendants. Their motions (Docs. 34 and 36) are GRANTED and the Clerk is directed to enter judgment in favor of both defendants.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

April 12, 2007

Kansas City, Missouri